cc: SOM
Anthony Nesbit & William Kotis
T.C.C.F.
295 Hwy 49 South
Tutwiler, MS. 38963
Plaintiffs pro se

ORIGINAL

In the United States District Court
For the District of Hawaii

| | |
|---|---|
| Anthony Nesbit<br>Plaintiff<br><br>vs.<br><br>Dept of Public Safety,<br>State of Hawaii et al,<br>Defendants | Civil No. 03-00455-SOM-KSC<br>Consolidated<br><br>Plaintiff's Motion in Opposition<br>to Defendants Motion for<br>Summary Judgement |
| William Kotis<br>Plaintiff<br><br>vs.<br><br>Dept of Public Safety,<br>State of Hawaii et al<br>Defendants | Civil No. 04-00167 SOM-KSC<br>Consolidated<br><br>FILED IN THE<br>UNITED STATES DISTRICT COURT<br>DISTRICT OF HAWAII<br><br>JAN 18 2006<br><br>at 3 o'clock and 20 min. PM<br>SUE BEITIA, CLERK |

Comes Now Anthony Nesbit and William Kotis Plaintiffs pro se and in forma pauperis with their Second Motion in Opposition to Defendants Motion for Summary Judgement. Plaintiffs pray this Honorable Court will also consider their Arguements and Law and Concise Statement of facts in their First Opposition to Defendants Motion for Summary Judgement which was filed March 23rd 2005 as well as Arguements and Law and Evidence herein.

Plaintiffs file this Motion Jointly with Memorandum of Law with Declarations and Exhibits herein.

Plaintiffs also wish to file a Supplement once their Ordered Discovery Materials (Interrogatories) are recieved and add this Supplement in addition to this Opposition at a later time, within reasonable time once Ordered Discovery Materials are recieved by Plaintiffs, if agreeable with this Honorable Court.

Respectfully Submitted,

Date January 6, 2006 - 1/6/06

William Kotis

Anthony Nesbit
Plaintiff pro se

SCANNED

In the United States District Court
For the District of Hawaii

| | |
|---|---|
| Anthony Nesbit<br>Plaintiff<br>vs.<br>Dept of Public Safety, State of Hawaii, et al<br>Defendants | Civ. No. 03-00455 SOM-KSC<br>Consolidated<br><br>Plaintiffs Opposition to Defendants Motion for Summary Judgement<br>Memorandum |
| William Kotis<br>Plaintiff<br>vs<br>State of Hawaii Dept of Public Safety et al<br>Defendants | Civ. No. 04-00167 SOM-KSC<br>Consolidated |

## Plaintiffs Opposition to Defendant Motion for Summary Judgement

Comes Now Anthony Nesbit Plaintiff and William Kotis Plaintiff, Plaintiff's are pro se and informa pauperis and Come Now to move this Honorable Court to deny defendants Motion for Summary Judgement and also to deny them Qualified immunity.

In the Honorable U.S. Judge Susan Oki Mollway's Order of April 18, 2005 " Denying Defendants Motion for Summary Judgement" at page 17

"this Court therefore analyzes Plaintiffs standing to assert their claims challenging HCF's housing policies under Fed. R. Civ. P. 12(b)(1). See White v. Lee 227 F.3d 1214, 1242 (9th Cir 2000)

page 1 of 28

2/

also, in the Honorable U.S. Judges Order filed Oct 04, 2005 "Order denying defendants Motion to dismiss" at page 14

"Defendants have Mischaracterized Nesbit's and Kotis's action........... they are clearly alleging that HCF's housing policy, in and of itself, is unconstitutional and puts them at serious risk of harm from the intimidation, coercion, threats, and ultimately, assaults that they allegedly subjected to by gang members. their claims of assault are support for their claims."   also at page 15

"Both Nesbit and Kotis have fully exhausted their claims that the HCF housing policy was unconstitutional."

Plaintiffs grievanced HCF's housing practice and those defendants who have the power to abate this dangerous housing practice were made aware through those grievances and have actual and constructive knowledge of the conditions, circumstances, and situation present in the challenged housing practice. those defendants signed Plaintiffs grievances and demonstrated a deliberate course of action from among various alternatives in allowing the unconstitutionally defective practice to continue to be applied

those defendants delegated the authority to their subordinates, tacitly authorizing the use of the housing practice and it is their acquiescence that is the moving force behind the constitutional violations.

those defendants that signed plaintiffs grievances
#1 Failed to provide training in the practice and or adequate training in regards to the challenged housing practice
#2 Failed to provide any clear written rules for the housing practice or written instructions
#3 Failed to provide safeguards when applying the housing practice (screening) (review).
also see plaintiff causes of action —

3

#4 Failed to provide adequate classification for Non-gang Members to determine compatibility with separated rival gang members or if they were gang targets

#5 Failed to monitor and investigate inmates grievances and complaints concerning the housing practice for gang targeting

#6 Failed to recognize an obvious danger and a high probability for danger in the housing practice by being deliberately ignorant to a long standing and well documented record of injuries and gang membership in the application of the challenged housing practice

Those who signed plaintiffs grievances are starting at the top for Causal Connection and Affirmative link —
 Institutional Division Administrator — Edwin Shimoda
 HCF Warden — Nolan Espinda
 HCF assistant Warden — Eric Tanaka
 HCF assistant Warden — Randy Asher
 HCF Supervisor Cinda Sandin

(Note: HCF assistant Warden initials appear on grievance #91644 Randy Asher initials and Eric Tanaka's signature present.)
 This reasonably is the Causal Connection between the Action of the defendants and the Unconstitutional housing practice also affirmative link in the Offensive Acts and Constitutionally defective practice.

Defendant Edwin Shimoda (IDA) is high enough up the Chain of Command to demonstrate a deliberate course of action from among various alternative.

Plaintiffs point to an easy alternative in making the housing practice safe which is separate Non-gang members from Separated Rival prison gangs. This is the logical reasonable sensable solution considering the Nature of rival prison gangs.

4

Failure to promulgate their statutory duties and those senior prison officials John Payton Director of Public Safety - Frank Lopez Deputy Director at the time of the Constitutional Violations - James Propotnic Director of Public Safety - and Edwin Shimoda Institutional Division administrator responsible for answering inmates 3rd step and final grievance and answered plaintiffs grievance these Defendants cannot take a Back seat to this type of housing practice and Blame their subordinates it is their acquiescence and tacit Authorization in the challenged housing practice, they never said that the practice was wrong and the Court can expect this type of housing practices to continue.

"Deliberate indifference can be inferred from evidence that letters were sent by inmates to prison administrators informing them that conditions significantly increased the possibility of serious harm"

"the Long duration of a cruel prison condition may make it easier to establish knowledge and hence some form of intent" quoting Ingalls v. Florio 968 F.Supp 193 (D.N.J. 1997) at 198 — In addition, the fact that a Supervisor promotes a policy that infringes upon the Constitutional rights of an inmate can be the affirmative link contemplated by the Supreme Court in Rizzo.

It is not necessary for § 1983 Liability that the defendants directed any particular action ...... only that they affirmatively promoted a policy which sanctioned the type of action which caused the Violation,

Promulgation of an offending policy or procedure amounts to sufficient personal participation in the Constitutional Violation to give rise to individual liability on the part of the supervisory official quoting Ingalls v. Florio 968 F. Supp 193 at 197 []

The housing practice is said to have existed and in place for 1-2 years - Cinda Sandin reply to Anthony Nesbit Question on how long have prison gangs been separated

page 4 of 28

5

the Causal Connection is demonstrated in those prison officials who recieved and read Plaintiffs Grievances that informed them of that Conditions in the housing practice significantly increased the possibility of Serious harm and that the housing practice is a Violation of equal protection Laws and a Constitutional Violation of 8th Amendment. All defendants who signed Plaintiffs Grievances had actual and Constructive Knowledge of the risk of serious harm in the application of the Challenged housing practice.

Other Evidence suggest that defendants had more than a mere suspicion. Plaintiffs present Declarations from 5 other inmates that were beaten in the housing practice they all were and are Non-Gang Members. Plaintiffs could present more records and reports of Beatings upon Non-Gang Members at the hands of Separated rival prison gangs in the housing practice However Plaintiffs do not have access to those documents because of Confidentiality, these documents would and Could have shown a history of beatings, coercion, sex assault in the use of the housing practice and the extent and Numbers with which this was occuring that evidence would demostrate a pattern of abuse and deliberate indifference and Callous indifference in the application of the housing practice.

How many beatings in a Suspect Class based Classification scheme housing practice does it take to Not Conform to the evolving standards of decency that Mark the progress of a Maturing Society? How many inmates must be injured before a pattern can be established?

How many grievances must be answered before actual and Constructive Knowledge of a Substantual risk of harm in the practice can be infered or demonstrated.

Plaintiffs have little legal knowledge and really do not understand Official, Individual or personal liability or how it would applie this is for the Honorable Court to decide. Plaintiffs attempted to explain this in their Reply Memorandum filed March 24th 2004. also see Memorandum filed Feb 02, 2005.

page 5 of 28

6

There are few case laws on point with the circumstances and situation in this challenged housing practice, but some are similar and have relevant components.

In Jones v. Sheahan 2003 WL 22508171 (N.D. Ill.) at pg 3 & 7

pg 3

*4 At the same time, a plaintiff "may not attribute any of his constitutional claims to higher officials by the doctrine of *respondeat superior;* 'the official must actually have participated in the constitutional wrongdoing.' " <u>Antonelli v. Sheahan</u>, 81 F.3d 1422, 1428 (7th Cir.1996) (quoting <u>Cygnar v. City of Chicago</u>, 865 F.2d 827, 847 (7th Cir.1989)). Thus, " § 1983 lawsuits against individuals require personal involvement in the alleged constitutional deprivation to support a viable claim." <u>Palmer v. Marion County</u>, 327 F.3d 588, 594 (7th Cir.2003). This standard, too, may be met either by proof of direct participation in alleged constitutional violation or by "a showing that the [official] acquiesced in some demonstrable way in the alleged constitutional violation." *Id.* In deciding whether that showing has been made against senior officials, the Court must consider whether the alleged constitutional violation relates to an isolated episode or, instead, to a more systemic or chronic situation. <u>Antonelli</u>, 81 F.3d at 1428-29 (while senior officials could not "realistically be expected to be personally involved in resolving a situation pertaining to a particular inmate unless it were of the gravest nature," senior officials "can be expected to know of or participate in creating systemic, as opposed to localized, situations").

pg 7

Not Reported in F.Supp.2d
2003 WL 22508171 (N.D.Ill.)
(Cite as: 2003 WL 22508171 (N.D.Ill.))

F.3d at 593 (quoting *Butera*, 285 F.3d at 605). However, the jury fairly could have concluded that this case did not present a question of the defendants merely selecting one policy rather than another for dealing with the substantial risk of serious harm from gang violence against non-gang members. The evidence allowed the jury to conclude that the defendants instead opted to have no policy at all. There was evidence that prison officials were aware of the need to separate gang members from non-gang members; that they obtained information about gang affiliation that would allow them to make that separation; but that they then failed to institute any practice or policy designed to separate gang members from non-gang members.

Jones v. Sheahan, 2003 WL 22508171 (N.D.Ill., Nov 04, 2003)(NO. 99 C 3669, 01 C 1844)

... Pedro Manzanalles struck, hit or kicked the Plaintiff on March 7, 1999; and Second, that the plaintiff belonged to an **identifiable group** of **prisoners** for whom the risk of assault was a serious problem of substantial dimensions, because of targeting by gangs; ...

Rather, the conduct here involved a systemic and continuing disregard of the risk of serious harm and the unwillingness to take any steps to separate gang members from non-gang members in housing assignments--despite evidence that it was generally known by prison officials that "we have to, in most cases, place [non-gang members] separately from the rest of the jail population" (Maul Dep. at 68-69). A jury reasonably could consider it to be "reprehensible" for prison officials to disregard such a known, substantial risk of serious harm. constitutional rights. We also find the evidence was sufficient to permit a jury to find that the constitutional violation was the result of an "official policy," in the form of a "widespread practice." Mr.

page 6 z 28

7

*Plaintiffs have claimed and mentioned that the housing practice is unconstitutional because of gang targeting, other Courts have recognized this principle of law.*

80.  ▷  Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811, 62 USLW 4446 (U.S.Wis., Jun 06, 1994)(NO. 92-7247)   *Supreme Court*

... that a prisoner can establish exposure to a sufficiently serious risk of harm "by showing that he belongs to an **identifiable group** of **prisoners** who are frequently singled out for violent attack by other inmates"). If, for example, prison officials were aware ...

106.   Hale v. Sklodowski, 1990 WL 36259 (N.D.Ill., Mar 05, 1990)(NO. 87 C 8817)

... to harm Walsh [plaintiff inmate], their failure to respond to the known danger of assault upon a member of an **identifiable group** of **prisoners** that are targeted by gangs, with the institution of reasonable screening procedures and safeguards to protect the safety ...

100.   Brooks v. Singletary, 1990 WL 172567 (N.D.Ill., Oct 24, 1990)(NO. 88 C 2865)

... meant to harm the inmates. "[T]heir failure to respond to the known danger of assault upon a member of an **identifiable group of prisoners** that are targeted by gangs ... reaches the Eighth Amendment standard of liability...." Id. at 797. Because the ...

93.   Moore v. Peters, 1992 WL 186043 (N.D.Ill., Jul 24, 1992)(NO. 91 C 5883)

... plaintiff must allege "either that assaults occurred so frequently that they were 'pervasive,' or that [the plaintiff] belonged to an '**identifiable group of prisoners**' for whom 'risk of ... assault [was] a serious problem of substantial dimension.'" Id at 476. In ...

... cell. The court held that "their failure to respond to the known danger of assault upon a member of an **identifiable group of prisoners** that are targeted by gangs, with the institution of reasonable screening procedures and safeguards to protect the safety ...

... by gangs; 3) since the plaintiff was known as such a targeted inmate that he was a member of an **identifiable group** of **prisoners** for whom the risk of assault was a serious problem; and 4) the defendants operated a security ...

35.  ▶  Mayoral v. Sheahan, 1999 WL 1191431 (N.D.Ill., Dec 07, 1999)(NO. 96 C 7249)

... to defeat summary judgment on this claim, he must set forth evidence from which a trial jury could conclude that **prison** officials knew a serious security problem existed for an **identifiable group**, and that Sheahan and Theisen failed to institute screening ...   *(page 7 & 28)*

8

118.  ▷  Walsh v. Mellas, 837 F.2d 789 (7th Cir.(Ill.), Jan 21, 1988)(NO. 86-2413)

... exhibited "deliberate indifference" to prisoner's right to security and constituted "punishment" within meaning of Eighth Amendment; officials knew that injured **prisoner** was targeted by gang and was member of **identifiable group of prisoners** for whom risk of assault was serious problem;

32.  Jones v. Sheahan, 2000 WL 1377114 (N.D.Ill., Sep 25, 2000)(NO. 99 C 3669)

... court explained that deliberate indifference may be found where "prison officials fail to protect an inmate who belongs to an **identifiable group of prisoners** for whom the risk of assault is a serious problem of substantial dimensions, including prisoners targeted by gangs." ...

158.  ▷  Murphy v. U.S., 653 F.2d 637, 209 U.S.App.D.C. 382 (D.C.Cir., May 18, 1981)(NO. 80-1552)

... to reasonably apprise prison officials of existence of the problem and need for protective measures; it is enough that an **identifiable group of prisoners**, rather than all **prisoners**, are subject to this fear if complainant is a member of that group. U.S.C.A.Const. ...

... the need for protective measures. Id. Not all prisoners need be subject to this fear. "It is enough that an **identifiable group of prisoners** do, if the complainant is a member of that group." Id.[FN28] ...

163.  Wilcher v. Curley, 519 F.Supp. 1 (D.Md., Jun 10, 1980)(NO. K-77-440, K-77-2066)

... there is present in a prison or in an identifiable portion of it, a pervasive risk of harm to all **prisoners**, or to an **identifiable group** of them, the constitutional prohibition against cruel and unusual punishment requires that prison officials exercise ...

156.  ▷  Dawson v. Kendrick, 527 F.Supp. 1252 (S.D.W.Va., Aug 10, 1981)(NO. CIV. 78-1076)

... It is not necessary to show that all prisoners suffer a pervasive risk of harm. It is enough that an **identifiable group of prisoners** do, if the complainant is a member of that group. .... When there is present in a prison ...

... there is present in a prison or in an identifiable portion of it, a pervasive risk of harm to all **prisoners**, or to an **identifiable group** of them, the constitutional prohibition against cruel and unusual punishment requires that prison officials exercise ...

153.  Vance v. Bordenkircher, 533 F.Supp. 429 (N.D.W.Va., Mar 02, 1982)(NO. CIV. 81-0320-E(H))

... It is not necessary to show that all prisoners suffer a pervasive risk of harm. It is enough that an **identifiable group of prisoners** do .... When there is present in a **prison** or in an identifiable portion of it, a pervasive ...

... there is present in a **prison** or in an identifiable portion of it, a pervasive risk of harm to all **prisoners**, or to an **identifiable group** of them, the constitutional prohibition against cruel and unusual punishment requires that prison officials exercise ...

31.  Pagan v. County of Orange, New York, 2001 WL 32785 (S.D.N.Y., Jan 04, 2001)(NO. 99 CIV. 12319 (CM))

... denied summary judgment because officials were aware of facts from which an inference could be drawn that there was an **identifiable group of prisoners** who were at risk of substantial harm. Whether they drew that inference was a question of fact that ...

9

In Robinson V. Prunty 249 F3d 862 at 863 (9th Cir 2001)

"Genuine issues of Material fact as to whether alleged Conduct of prison officials and guards evidenced deliberate indifference to risk that Violent outburst would result from placing inmates of different racial backgrounds in integrated exercise Yards precluded summary judgment as to whether defendants were entitled to qualified immunity --- USCA Const Amend 8; 42 USCA § 1983; FRCP Rule 56, 28 USCA."

Also at page 867

"the defendants awareness of and indifference to this risk is demonstrated by the **alleged frequency** with which such outbreaks occur." Robinson 249 F3d 862 at 867

— Points on gang targeting — and frequency —

Plaintiffs present Genuine issues of Material fact through their own Complaints and the Declarations of 5 other inmates beaten at the hands of Separated (Concentrated prison Gang Members of a Single Gang) this demonstrates the practice is Widespread and systemic as well as suggesting and showing a pattern.

Plaintiff could have and would have presented the Honorable Court with 50 to 100 assaults on Non-gang inmates since the housing practice started their record is Confidential therefore plaintiffs Can not demonstrate this allegation however Plaintiffs have shown the tip of the iceburg in regards to a pattern of beatings occurring in the practice resulting from gang targeting.

Plaintiffs in their Declaration filed April 14th 2004 at page 2 lines 1-6 and lines 7-14 also line 15, in lines 1-6 plaintiff Anthony Nesbit spoke with Grievance specialist Bob Webb who had been grievance specialist for 3 Years he said he recieved and knows about a dozen grievances a Year that complain of the housing practice and assaults occuring in it. reasonably this is a satistical number per Year for 3 Years, about 36 grievances then there are inmates beaten that file No grievances but a report is made.

page 9 of 28

10

Defendants never rebutted this allegation, and it demonstrates awareness of the danger in the practice as well as deliberate indifference in failure to provide inclusive classification, screening, training, or the option of protective custody before assigning housing in separated concentrated rival prison gang housing area, this would have and could have prevented many assaults and gang recruitment.

The court cannot expect defendants to admit a wrong as in Redman V. County of San Diego 942 F.2d 1435 at 1450 "Because a defendant will rarely admit an awareness and conscious disregard after becoming aware of risk the trier of fact must examine objective criteria."

Plaintiff argue that putting non-gang members targeted by gangs in with concentrations of separated rival prison gangs also presents a high probability and certain likelyhood of assault or gang recruitment, and gang targeting.

"We doubt that a subjective approach will present prison officials with any serious motivation" to take refuge in the "Zone between ignorance of obvious risks and actual knowledge of risks — whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." quote Farmer V. Brennan 114 S.ct 1970 at 1981 (1994)

"For example, if an eighth amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was longstanding, pervasive, well documented, or expressly noted by prison officials in the past and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk." quoting Farmer 114 S.ct at 1981. (page 16 of 28)

11

"--- does the regulation create inhumane prison conditions, deprive inmates of Basic necessities or fail to protect their health or safety --- does it involve the infliction of Pain or injury, or deliberate indifference to the risk that it might occur" quoting Overton v. Bazzetta 123 S.Ct. 2162, at 2170 (U.S 2003)

Plaintiffs Argue the housing practice does involve all of the above, and pose this cited case law as a question leaving out the word (Nor), and a reasonable person seeing the evidence and Circumstances serrounding this housing practice would and could see an Obvious danger and a Equal protection violation.

Plaintiffs Argue that housing placement in the Segregated housing Area be it for one day or a week or month or Year is a Violation of Plaintiffs Constitutional rights and it is an Obvious danger beforehand and a foreseeable danger when You put ducks in with Snakes or **sheep** in with wolves) the Consequences are most likely certain to result in a Serious risk of harm when the Evidence suggest that this was happening with frequency).

Plaintiffs Argue that the housing practice was active and in place long before Plaintiffs were exposed to it as well as defendants knowledge of the danger in it, this is like having a Bridge with a large hole in the middle of it, Only defendants knew about the hole and that other inmates had fallen in it and were seriously injuried others adapted after falling in the hole. the point here is defendants never told plaintiffs that a hole in the middle of the Bridge was there and that they could fall in and get hurt, instead they sent them across this defective bridge. Knowing there is a high probability that they will like others fall into it.

12

"We firmly believe that the failure of Prison Authorities to even review an inmates file to determine his or her proclivity for Violence and/or whether they are a gang target in the face of gang related threats and Violence manifest utter disregard for the Value of human life, this we will not Condone, for in America we respect the Sanctity of human life including those Confined in penal institutions. quote in Walsh v. Mellas 837 F.2d 789 at 798." (7th cir 1988)

Plaintiffs Argue that they were never seen personally by any Classification Team and were never able to Verbally Communicate anything to the Classification person or persons. Plaintiff were notified about there Classification decision on the day of transfer to Halawa High Security facility, this decision did not include Plaintiffs and Plaintiffs only recieved a paper that was hard to interprete other than they were being Transfered

Plaintiffs Argue no determination was ever considered in Regards to Compatibility between Plaintiffs and Separated Concentrated prison gang Members. if a single one of Plaintiffs were made aware that this was where and who they were being housed with Plaintiffs would of objected to the housing assignment realizing the Nature of prison gangs and the danger there and the high probability of Violence.

Plaintiffs also Argue on the other hand Safety Considerations were given to rival prison gangs when they were classified as Violent which resulted in there Separation in different housing areas.

"Courts may infer deliberate indifference to a known hazard for Eighth Amendment purposes, when prison officials fail to protect inmates who Belong to

page 12 of 28

13

a identifiable group of prisoners for whom risk of assault is a serious problem of substantial dimensions, including prisoners targeted by gangs. U.S.C.A. Const Amend 8. Lewis v. Richards 107 F.3d 549 at 550 (#6 & 7) #8).

To succeed on theory that prison officials consciously ignored threat posed by "gang targeting" in violation of Eight Amendment inmate must demonstrate that officials either took no precautions to avoid known hazard which gang presented, or that precautions they took ignored risk which targeted inmate faced. U.S.C.A. Const Amend 8. pg 550 #8 quoting Lewis 167 F.3d 549.

"Much of the violence occurring in the housing practice is intended to recruit Non-gang prisoners and intimidate the general population in a demonstration of gang power and organized gang targeting there different types of violence and purposes for violence occurring in the practice are Not the same kind of violence occurring in the general population.

For one thing inmates (Non-gang) in the housing practice are up against a organized group of rival gang members who operate and function as one. Whereas in the general population violence occurring is between 2 inmates and Not an organization demonstrateing a goal and a purpose as a prison gang. the fact that violence occured at all in the challenged practice is of significance because the practice employs a class based classification scheme implicating equal protection laws as well as 8th Amendment violations.

Plaintiffs argue that there are so many important factors and considerations when housing Non-gang inmates in the challenged housing practice that when defendants chose to disregard and ignore this, they created a known risk of harm and ignored a serious risk of harm and the serious risk of harm was and is obvious when considering gang targeting and rival gangs propensity for violence.

14

Supervisory liability exist even without personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the Constitutional Violations - quoting Redman v. County of San Diego 942 F.2d 1435 at 1446 (9th Cir 1991).

In Robinson v. Prunty Defendants were denied qualified immunity because "the defendants awareness of and indifference to the risk is demonstrated by the alleged frequency with which such outbreaks occur." Robinson 249 F.3d 862 at 867 (9th Cir 2001)

Plaintiff argue that the longstanding frequency of gang targeting and beatings occuring in the challenged housing practice is no different that circumstances and simulacty in Robinson.

Plaintiff also argue that a reasonable person would have believed his or her conduct to be unlawful in light of preexisting law. Farmer v. Brennan 114 S.Ct. 1970 at 1971 (#13)

"Official would not escape liability if evidence showed he merely refused to verify underlying facts that he strongly suspected to be true or declined to confirm inferences of risk that he strongly suspected to exist."

Defendants admit violence occured in the housing practice but omit the frequency of violence or the types of gang targeting for purposes of recruitment, extortion, control, or sex or for fun.

This evidence is significant in revealing the tip of the iceburg in regards to a pattern of deliberate indifference over the years the housing practice has been in use and callous indifference.

15

A Supervisory official who has not directly participated in the conduct complained of may be found personally involved in the deprivation of an inmates rights in other ways.

The Personal involvement of a Supervisory defendant may be shown by evidence that (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Plaintiffs argue that those defendants in positions of power that responded to plaintiffs grievances and signed those grievances have the authority to abate the housing practice complained of and the danger therein or provide safeguards before assigning plaintiffs and prisoners (Non-gang members) into a dangerous housing area.

Defendants in failing to abate a known danger created and failing to implement sufficient safeguards allowed the state of nature take its course in the use of the dangerous housing practice, this in turn is what plaintiffs claim acquiescence in the deprivation of plaintiffs constitutional right in allowing their subordinates to use this practice with unbridled discretion, this in turn allowed and invited abuse in the challenged housing practice and in a class based group classification housing practice, that plaintiffs assert are violations of Equal Protection Laws.

page 15 of 28