Exhibit H.

Plaintiffs Exhibit included
herein. (opposition to Declarations)

1

Plaintiffs Opposition to Defendant Gary Kaplan's
Declaration filed Dec 9th 2005 and
— these are for the most part Bare assertions —
By Defendants that plaintiffs Oppose
Mr Kaplans Declaration at (paragraph 6) Gives a
General statement Concerning Closed Custody Classificat-
ion However the accuracy of this General statement
Cannot be ascertained, because no written policy on
Closed Custody Classification is provided, the absence of
Written Rules and written instruction and or clear Written
policy is indicative that (1) Defendants are appleing
Closed Custody Classification in Contridiction to written
policy and Rules (2) the absence of a Closed Custody policy
is indicative that there is no specific Guidence in applieing
Closed Custody). the absence of written policy are a
red flag and a General statement does not provide the
type of definitive answers that are important in decid-
sing, this Case as well as evidence,
    also Contained in (paragraph 6) Mr Kaplan states
that "A Closed Custody Classification implies that the
enmate May have a propensity toward Violence" - the words
"May have" are significant here when Considering at
(paragraph 8) Mr Kaplan states "those who demonstrate
the propensity for Violence are usually reclassified to
Closed Custody" this statement is made in reference to
Separated Concentrated Rival prison gang Members)
and Leaders
            So Now this Statement Conjurns the Mixing of
plaintiffs (Non-gang Members)" who may have a propensity
toward Violence" in with Rival prison Gangs and Leaders
"who demonstrate the propensity for Violence" Moreover
Halawa High Security houses the most Violently and
Violently demonstratable Rival prison gang Members)
whereas plaintiffs "May have a propensity toward Violence"
there is a distinct and disparate diffrence here

2

Mr. Kaplan's statement at (paragraph 8) admits there is "No Black and White policy at Halawa with regards to housing assignments and prison gangs" this admission of its own demonstrates no Specific Guidence in the Challenged housing practice and no specific Guidelines regarding application of the housing practice in different situations this in turn Resulted in impermissable Group Bias upon an identifiable group of prisoners who are Non-Gang Members who were denied an Equal Opportunity to participate in the Class based Classification Scheme Separation that was and is used to house Rival prison Gangs in the Challenged housing practice this in turn invited abuse upon Non-Gang inmates and exposed prisoners to a known risk of Serious harm and a high potential for serious harm.

When there are no definitive written instructions, Guidelines, or Rules are more symptomatic of a more General disregard for the importance of Written policies such as Dept of Public Safety policy Concerning the right to Safe Custody – thus Creating a schism between the prisons written policies and its Actual Operating procedure.

Adequate Classification, Screening, Monitoring and Supervision is probably the Most Critical Component of any system that utilizes a Separated prison Gang Rival housing practice Not only does it serve as an immediate check on any abuses but it Creates an atmosphere that encourages responsible Conduct (see Nesbit Causes of Action 1, 7, 10)

Plaintiffs argue the absence of written rules, policy, instruction for application in different Circumstances Gave carte blanche and unbridled authority for staff and Guards to impose there own notions of hatred and Conflict upon prisoners.

page 2 of 13

<u>3</u>

regardless of whether these notions are based on fact or deeply-held sterotypes the absence of clear written instructions gave guards carte blanche to use the practice as a means to control and punish the inmate body. This absence of written policy invites abuse against prisoners. The practice has been used for years there is no excuse for deliberate disregard for written rules and instruction for a class based group classification scheme, they have the means and the knowledge of rival prison gangs and the know how, this absence is deliberate indifference to those prisoners and plaintiff who are an identifiable group of prisoners (Non-Gang Members) who because of gang targeting in the housing practice were subject to violence, coercion, sex assault years before plaintiff were assaulted. Defendants had plenty of time to provide some or any written instructions and rules.

Mr. Gary Kaplan Declaration at paragraph 8 & 9 attempts to explain prison gangs at Halawa the knowledge Mr. Kaplan demonstrates in describing these prison gangs "status, power, protection" are true, the way prison gangs applies power, status, protection is through violence, who is Mr Kaplan trying to fool by saying "and simply a desire "to belong" Mr. Kaplan attempts to diffuse rival prison gangs violent character and nature not to mention a dedicated criminal organization that has maimed and killed and distributed and smuggled drugs and weapons more than any terrorist organization in the United States, this is in reference to prison gangs in general.

Mr. Kaplan wishes to use a general statement that is aimed at minimizing rival prison gangs propensity for violence, while common experience tell us prison gangs are a "definite danger to public order and safety" Madrid V. Gomez 889 F.Supp 1146 at 1240 F. Segregation of Prison Gang affiliates. - (Impact prison gangs have on a city see U.S. V. Fernandez 388 F.3d 1199 9th Cir 2005) Impact prison gangs have over street gangs.)
page 3 13

4

Mr. Kaplan at para 8 Gang Membership tends to be a homemade tattoo which is not easily removed. Plaintiffs argue that the tattoo is not meant to be removed and prison tattoo's are better than professional. However the point here is the proliferation of prison Gangs is attributable to the Challenged housing practice because of Gang targeting.

Mr Kaplan states "as fast as we Can confiscate the instruments of tattooing the inmates seem to be able to Construct new ones." However Mr Kaplan does not explain how a tattoo machine can get into a Maximum security prison. Plaintiffs will explain this Guards and Gangs work together for favors, this includes tattoo motors, drugs and drug distribution in and out of prison. Prison Gangs have a Great influence over Control of the Guards because they have Connections to ice in large Quantitys outside of Prison ( ice (Meth) ) which also means profit from money in and out of Prison. there is just to much to say Concerning this.

the point is this instrument of tattooing and the enability to eradicate it suggest and shows prison Gang recruitment through Gang targeting in the housing practice.

Mr. Kaplan statement at para 10 It has been our experience that in the general population, the incidents of Violence perpetrated by Gang Members upon non-gang members is no higher than incidents of Violence in General.

this is another general statement Considering the Honorable Court has not seen any Clear Written rules, policy, instruction Concerning the housing practice but only general Statements Concerning Closed Custody, Classification, and Non "incidence of Violence;" the accuracy of this statement Cannot be ascertained for instance the general population is 900 inmates and the housing practice holds about 300 inmates, then the Violence occurring in a population of 900 inmates

page 4 of 13

5

equals that of 300 then that would be 3 times higher
in the Challenged housing practice areas, Or let us say
that Violence in the General population is pervasive then
that would make the Challenged housing practice area a
Violently pervasive area. These theorys present Can be
applied to General statements since no records for
written rules exist or are not provided for any thing
other than general statements how can the accuracy
of Mr. Kaplan statement have, does he see or investigate
every report or incident of Violence).

Plaintiffs have asked for these records but were
denied due to Confidentiality these records would have
and Could have demonstrated a longstanding and recorded
history of Violence upon an identifiable group of prisoners
who are Non-Gang Members in the application of the Challenged
housing practice that suggest and in fers and demonstrates
a pattern, Plaintiffs would not be surprised if defendants
if ever Compeled to produce these documents would also
say there is nothing in Black or White.

Plaintiffs argue and shown in Anthony Nesbits
Grievance #91644  that Violence that does occur in
the housing area is distinctly different where as Violence
is directly a result of Gang targeting for the purpose of
recruitment and Plaintiff who are Non-Gang Members
are up against an Organization of Rival prison Gang
Members that Operate and function as an Organized
unit, Group, Network, and Gang), this Violence occuring in
the housing practice is Not the same as Violence occuring
in the General population, where Violence occuring in the
General population is one on one and for the Majority does
not involve Gang targeting or efforts to recruit through
Gang targeting Violence), Plaintiffs argue this Omission is
also significant where Violence in the Challenged housing
practice is directly the result of Gang targeting for recruit
ment purposes, Most Violence occuring on the housing
practice gos unreported and staff and Guards tolerate

page 5 of 13

6

Gang recruitment of Non-Gang Members through gang targeting which enhances that such incidents will occur in the housing practice area. One other point here is once a Non-Gang Member rejects the offer of Membership in with the rival prison gang he is housed with he go's from potential recruit to rival until he submits through Coercion, Violence, "gang targeting" to join.

Mr. Gary Kaplan statement at para 12 "We do recognize that the population of the High Facility is Composed of More Violent inmates" Plaintiff argue there are those who may have a propensity toward Violence and then there are those who demonstrate the propensity for Violence and then there is the Omission of a Class Based Classification scheme used in the practice However from admission of Separating rival prison gangs and the Omission of Concentrating them into Certain Areas of the prison is sufficient evidence to demonstrate a prima facie case of discrimination, impermissible group bias, Unconstitutional exclusion, and denying plaintiffs and prisoners who are an identifiable group of Non-Gang Members an equal opportunity to participate in the Class based Separation Classification scheme making this Challenged housing practice a Violation of Equal protection laws and also exposing prisoners and plaintiffs an identifiable group to a known risk of serious harm and exposer to a potential to a known risk of serious harm, this practice is Cruel and Unusual Considering all the Circumstances and situations, admissions and Omission and this reasonable does not Conform to the evolving standards of decency that Mark the progress of a Maturing society and it Constitutes punishment Giving rise to 8th Amendment Violations and it is discriminatory.

The General public has a right to know how this practice will effect their future as well as prisoners. Plaintiffs have argued from the beginning issues of General public importance as well as Constitutional rights Violations in the housing practice.

page 6 of 13

7

Most assualts and sex assualt and gang recruitment in the housing practice go unreported because the victims understand that a repeat of injury is most likely to occur when prison officials, staff, guards tolerate such abuse in continueing to use and applie the housing practice, making it a high probability victims will be subject to the same conditions they complain of therefore repeat of assualts are common in the housing practice.

Since the practice has been tolerated for so long and injuries occuring from it as well as recruitment into gang membership and gang targeting this tolerance resulting in a callous indifference to those inmates becomeing victimized in the housing area, the point is a practice as dangerous as this should have and could have had sqeguards in place such as screening and enforming inmate if he as a Non-gang member felt he would get along or threatened because many other Non-gang inmates were beaten and strong armed by rival prison gangs.

The absence of so many safe guards made the potential for a serious risk of harm inevitable.

Many inmates when they told guards they felt threatened they were told that they have to live in the housing area others after being beaten were placed in with just another separated concentrated rival prison gang making it a high probability that victimization would repeat it self or the Non-gang member would become a new recruit.

The potential for a serious risk of harm because of the lack of authortive written rules which enhanced the serious risk of harm upon an idontifiable group of prisoners (Non-gang members) guards used the practice to control and punish the inmate body

page 7 of 13

8/

— Actual increased Risk of Harm —

Plaintiffs were put into a known dangerous situation there first day at Halawa High Security Prison and up against a Concentration of Seperated prison Rival Gang Members belonging to a Single Gang, it is undisputable Considering these circumstances that a high probability of Violence would befall plaintiffs when they rejected prison Gang Membership or for any reason for that matter and it was a Certain likelyhood and a easely predictable foreseeable danger that plaintiffs would be Victims of Violence at the hands of Seperated Rival prison Gang Members and Leaders attributable to a Constitutionally defective housing practice.

For the Record plaintiffs were Confronted with a Concentration of rival prison Gang Members and Leaders some already having been housed in the Challenged housing practice for Years and serving life Sentences and life without parole having already demonstrated time and time again there propensity for Violence and after a stay in the Hole 30 – 60 days these same Rival prison Gang leaders and Members are returned to the Same Challenged housing area only to repeat their Violent behaviour in Order to recruit New Gang Members or to demonstrate the prison Gangs power and Control through Violence. this behaviour was tolerated by defendants this pattern was tolerated and tolerance became deliberate in-difference in the application of the housing practice

Plaintiffs have no demonstratable history or record of institutional Violence whatsoever – plaintiff were never personally interviewed ever for any reason or for Compatibility determinations when being assigned to Challenged housing area

9

Defendants state there is no black and white policy.
But admit a policy (see exhibit F) the reasons given
for a unwritten policy, rules or instruction was that the
prison Gangs were evolving as well as the policy for prison
Gangs yet they were able to classify rival prison gangs
as having a propensity for violence and separate them
an concentrate them in certain areas of Halawa prison.

However no considerations were given to non-gang members
in the separation process before housing assignment which
could have and should have been done why it was not done
has not been adequately explained as of yet no written rules
or clear written policy has evolved and defendants have
had years to think about this since this practice started
in 1999 giving rise to an official policy.

The absence of clear written rules, policy, instructions
for all these years has evolved into a reckless disregard
reckless indifference and deliberate and callous indifference.
Tolerence in the abuse and victimization attributable to
gang targeting in the housing practice evolved into deliberate
indifference.

The housing practice nutralized in part violence
between rival prison gangs but not against non-gang
members who became the rival prison gangs targets thus
making the practice far from nutral for non-gang members.
You simply cannot have a class based classification housing
practice for one class (rival prison gangs) and not the other
class (non-gang members) because of the disparate effect
upon the identifiable group of prisoners who are always the
victims in this housing practice and are victims at the
hands of concentrated separated rival prison gang
members and leaders belonging to a single gang.
who still operate and function as an organization and
network who use violence and threats of violence against
those who oppose them and those who do not oppose
them. The housing of a non-gang member without screening or deter-
minations for compatibility in with security threat groups is a
foreseeable danger — page 9 of 13

10

When Defendants say that there is not enough
Violence for concern against Non-gang prisoners
occurring in the housing practice at the hands of
concentrated Separated Prison gang belonging to a
Single gang because its at the Same level as the
General population is crazy — this is what
Contributed to a proliferation of Newly recruited
Rival prison gang members as well as gang targeting)

Gang targeting occurring in the housing practice
is used to Break ones spirit and make him understand
that if he does not join or become an affiliate of the gang
he is housed with he will be beaten, if he tells (snitches)
he will be a target for retribution and Vengeance at the
hands of there organized structure and Network for the
duration of his prison sentence as the threat of Violence
hange over the targeted inmate head most of the
Time assaults go unreported, however assaults are
frequent and many are serious.

The Nature and Character of prison gangs and
Violence occurring in the practiced are focused and aimed
at achieving the goals and objective and purpose as
an (criminal organization.

Somewhere in the policies for prison gang management
and control there must be some indication of the Nature and
Character of rival prison gangs and prison gangs in General
This would indicate actual and Constructive Knowledge of
a Serious potential for harm and a known risk of harm in
mixing of Non-gang members in Concentrations of Separated
Rival gang belonging to a single gang)

Defendants evolving theory is not an excuse for the
absence of Safe guards for Non-gang members before housing
assignment Since they were able to do this for Rival prison
gangs without difficulty and for safety then it was
just as easy to do for those who are Non-gang members
and Vulnerable to gang targeting).

11

It took Plaintiffs a year of research before understanding the process and systems for adequately managing prison gangs. This is fully explained in Madrid v. Gomez (N.D. Cal 1995) 889 F.Supp 1146 at 1240 (F. Segregation of Prison Gang Affiliates) at Pelican Bay State Prison in Northern California this prison realizing that "prison gangs" are also a definite danger to public order and safety D.C.M.S. 5507.5 — and this prison in realizing this significant and real danger to the public took a "Pro Active stance in the arena of gang suppression" (at 1241) Procedure for Establishing prison gang Affiliation at (242), (1243), (1244) these pages describe an adequate system for Control and Management of Prison Gangs.

The point here is that prison gang Management is not new and it is known if prison officials cared to research this. But it is there (administrators, warden, Deputy warden, Supervisors) indifference to brutal and violent behavior toward inmates (Non-Gang Members) at the hands of Concentrated Separated rival prison gangs attributable to the housing practice that gave rise and is sufficient to state Eighth Amendment claim.

Defendants Could have easily used a similar gang Control system template used in California prisons But what Plaintiffs would like to point out there is no prison in America that Separates and Concentrates a Rival prison gang and houses them in a Certain area of a Maximum Security prison and then takes a new inmate his first day at that prison and house him a Non-Gang Member in with rival prison gang belonging to a single gang who are not lock down but free to roam a act and function as an Organized group and gang. The reason for this are Obvious as well as the arguments here in this Memorandum and Opposition.

12

Defendants Gary Kaplan, Linda Sanden and Monica Lortz have demonstrated a more personal, individual and official involvement in the Constitutionally defective practice. However once the housing practice was set in motion the only way to remedy the defective practice was through the grievance process and the power to abatt and or provide safe guards rests with those in power and at the higher chain of command who signed plaintiffs grievances.

Those Defendants at the higher chain of command had actual and constructive knowledge of the peril and danger described in plaintiffs grievances as well as a ~~the~~ many other similar grievances from inmates. Yet they deliberately chose a course of action from among various alternatives with tacit authorization and their acquiescence in the unconstitutional practice. Plaintiffs claim that as a collective body they are all responsible because anyone of them had the power to order or command screening for compatibility before housing assignment or affecting an informed choice of protective custody before housing assignment or any number of safe guards before housing assignment. They all were aware of the danger and an actual increased risk of harm (a known harm in the housing area and evidence and circumstances suggest and show this) and defendants will continue to demonstrate deliberate ignorance.

Defendants admit non-gang members are "sometimes" housed with separated rival prison gangs. This is the admission of arbitrary use against an identifiable group of prisoners in the use of a suspect class based classification scheme. Separation housing practice that excluded non-gang members from the separation group classification process and excluded from any safe guards and concerns before housing assignment. Frequency of violence resulting from gang targeting occurring in the challenged housing practice does not justify Defendant Gary Kaplan's reasons for useing

page 12 of 13

13

the housing practice simply because there are to many defective components in the practice that make the housing practice unconstitutionally defective and dangerous.

Once it is found that a jury could reasonable consider this practice a constitutionally defective practice any violence occuring therein would make the practice a greater liability. For one this practice does not square with the evolving standards of decency and dignity, moreover it puts not only prisoners at a known risk of harm and the potential for serious harm, it also put the public in harms way.

Who is responsible and culpable is for the Honorable Court to decide. Plaintiff hope that the Honorable Court will also consider arguments presented in prior pleadings as well as evidence present there.

Plaintiffs are pro se with no legal training or experience and have try to show the Court how inherently dangerous this whole process and practice is for prisoners and the public.

Plaintiffs are in opposition to Defendants Cinda Sandin and Monica Lortz as well as Gary Kaplan declarations and the practice complained of placed plaintiffs at a known risk of harm, actual increased risk of harm and a potential for serious risk of harm in failing to provide reasonable safe guards before housing assignment in a separated concentrated rival prison gang housing area.

Plaintiffs Anthony Nesbit and William Kotis, declare under the penalty of perjury and Law that the foregoing herein is true and correct and based on personal knowledge. Date January 6, 2006

William Kotis

Anthony Nesbit
Plaintiff pro se

page 13 of 13