Anthony Nesbit & William Kotis
T.C.C.F. E-1
295 Hwy 49 South
Tutwiler, Ms 38963
Plaintiffs pro se

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

APR 11 2006

at ___ o'clock and ___ min. __M
SUE BEITIA, CLERK

## In the United States District Court
### For the District of Hawaii

| | |
|---|---|
| Anthony Nesbit<br>Plaintiff<br>vs.<br>State of Hawaii Dept of Public Safety, et al<br>Defendants | Civil No. 03-00455 SOM-KSC<br>Consolidated<br><br>Plaintiffs Supplemental Response in Support of Plaintiffs Opposition with Defendants response to Plaintiffs interrogatories |
| William J. Kotis<br>Plaintiff<br>vs.<br>State of Hawaii Dept of Public Safety, et al<br>Defendants | Civil No. 04-00167 DAE-LEK<br>Consolidated |

Comes Now Plaintiffs Anthony Nesbit and William Kotis with their final supplemental response in support of Plaintiffs Opposition to defendants motion for summary judgement with Defendants answers to plaintiffs interrogatories. Plaintiffs wish to use this as evidence to support their Opposition and have presented law and arguments in support herein.

page 1 of 10

Plaintiffs recieved defendants reply memorandum in support of Defendants Motion for Summary Judgement filed March 30, 2006 On april 3, 2006 this was recieved along with some of the Ordered interrogatories all these legal documents were recieved by plaintiffs on April 3, 2006.

Plaintiffs have a hearing date for Defendants summary Judgement Motion on April 24th 2006 as set by the Honorable Kevin Chang at plaintiffs hearing for Discovery Sanctions and 2nd enlargement of time this new hearing date for summary Judgement was Verbally communicated to plaintiffs however no legal document has yet been recieved by plaintiffs regarding their request for enlargement of time or the Honorable Magistrates ruleing at the time of that hearing.

Plaintiffs are again faceing a Time limitation to argue Law and pleadings and put this all together before the April 24th, 2006 hearing date at this time which gives plaintiffs 20 days to respond plaintiffs have not recieved interrogatories from Defendant Edwin Shimoda as well as Defendant Chief of Security Saia Finau these responses are important in Supporting plaintiffs opposition to defendants summary Judgement Motion, for now plaintiffs will address what was recieved on April 3, 2006

Defendants rely on third-party decision in Civil Case 04-00414 filed in the U.S. District Court December 6, 2005, and in that Civil action the Honorable U.S. District court never recognized that Mr. Aholelei fully exhausted the Claim that HCF's housing policies was unconstitutional, or that Mr. Aholelei had standing to assert his Claims challenging HCF's housing policies under Fed. R. Civ. P. 12(b)(1) See White v. Lee 227 F.3d 1214, 1242 (9th Cir 2000) Howver this was recognized in plaintiffs Complaint, Claims and arguements and is of significance in 03-00455 and 04-00167 Consolidated

page 2 of 11

also in Mr. Aholelei Order of December 6, 2005 the Honorable District Court saw his pleadings as being flawed stateing that Mr. Aholelei arguments were not explicit in his Complaint or Opposition, where as in 03-00455 Consolidated plaintiffs Complaint the Honorable Court stated Plaintiffs "are clearly alleging that HCF's housing policy, in and of itself, is unconstitutional" and it is here that different Considerations and fundamentals of Law as well as arguements come into play concerning the Challenging of the housing practice see White V. Lee 227 F.3d 1214

Defendants argue that there is no law on point with plaintiffs Claims and Complaint argueing that this is not "Clearly established" law therefore Qualified immunity attaches. Plaintiffs arguements concerning simular complaints and law are more fully addressed in plaintiffs Motion in Opposition filed Jan 19, 2006 at pages 6, 7, 8 these pages show that simular situation and Circumstances in Case law do regonize gang targeting and non-gang members as an identifiable group of inmates frequently singled out for gang targeting and Violence and in this instant Case purposes for gang targeting will mainly recruitment in the Challenged housing practice area those who choose not to join the rival gang they are housed with will suffer pain and injury until they join or conform to the prison gang standard for acceptance which confirms this statement made by defendant R. Asher.

In defendant Randy Asher's answer to interrogatory #28

"Not necessary but possible. Being forced to join the majority unless the non affiliated gang inmate is strong enough to withstand the pressures of the gang."

Plaintiffs have claimed deliberate ignorance in there awareness of the high probability of gang targeting and the

page 3 of 11

longstanding and well documented history of beatings and coercion for recruitment purposes in the use of the challenged housing practice, defendants are aware but conscienciously avoiding the high probability of the fact in question.

The reason why someone (defendants) would do this is to impose their own notions of hatred and conflict upon prisoners, regardless of whether these notions are based in fact or deeply-held stereotypes, the housing practice has key defective components that allows and gives prison officials, staff, guards Carte blanche to do this and they do, also secondly defendants deliberate ignorance is an effort to escape liability.

When reading answers to plaintiffs interrogatories repeat word and phrases present are indicative of what plaintiffs see as coaching, directing, instructing, altering by defendants attorney who in concert with defendants use evasive, broad, and contradictory answers in an effort to escape liability, moreover answers to interrogatories are typed up at the attorney generals office, who knows what the original answers were before doctoring by the attorney generals office.

All defendants collectively played the "Ostrich" in the use of the challenged housing practice, defendants answer to interrogatory (#14) How many grievances for the last 5 years did you receive or know of that complained of prison gang members threatening, extorting or assaulting inmates (Answer some or don't know) this is a evasive and repeat answer to this interrogatory again demonstrating deliberate ignorance.

The extent of there awareness and knowledge of the known danger in the housing practice is demonstrated in there reply's to those grievances which they will not produce because they claim confidentiality and a burden, however plaintiffs evidence combined with answers to interrogatories show

page 4 of 11

and prove plaintiffs claims.

When combining the "some" answer to interrogatory (#14) all these "somes" suggest a pattern of abuse in the use of the challenged housing practice add these "somes" to plaintiffs evidence (declarations of other inmates beaten and coerced and forced rival gang memberships) and then add former grievance specialist Mr. Bob Webb who personally told plaintiff that he recieved about a dozen grievance a year from inmates that fear for their safety when housed with gang members and also told plaintiff that he recieves a handful of grievances per year that inmates say they were actually assaulted he also stated he has worked as grievance specialist for 3 years this conversation between plaintiff and Mr. Bob Webb occured in Halawa high security Law Library on or about Feb 2004 this is described in plaintiffs declaration filed April 14th 2004 at page 2 paragraphs 1 thru 6 also see paragraphs 7 thru 14 and 15—. Defendants never disputed plaintiffs description of the personal conversation he had with former grievance specialist or conversations with ACLU representitive Tim Fitzpatric or the letter plaintiff sent to defendant Nolan Espinda), Certainly all these admissions and omissions and declarations prove plaintiffs allegation and claims that defendants had actual and constructive knowledge of the known hazard and danger in the use of the housing practice and this danger was directed at an identifiable group of prisoners (non-gang members) and the evidence demonstrates this, and those defendants at the higher chain of command wish to take a back seat to their acquiescence in the use of a housing practice created by subordinates under which unconstitutional practices occurred, and or allowed the continuance of such a policy or custom. Their failure to promulgate their statutory duties in regards to safety and protection issues in their subordinates use in the housing practice and failure to train them and provide safeguards. Plaintiffs have shown from arguements and the mentioned evidence in this paragraph that a demonstratable pattern of victimization existed in the practice

page 5 of 11

Defendants Frank J. Lopez, and James Propotnick's response to plaintiffs first request for answers to interrogatories answers to interrogatories #28 are identical. and their answer raises question of why that particular situation was not addressed on a case by case basis. because it is these glaring deficiency that give rise to unconstitionally defective practices Both of these defendants in their interrogatories reiterate "potential to be a threat" again these are identical answers to interrogatory #23 thru 30, coincidence or direction and altering by Attorney Generals Attorneys who have an interest in this case they also are defendants in this action and approve policy and practices for the Dept of public safety these answers are some type of format response prepared and given by defendants attorneys again in order to escape liability. (see answers from Lopez and Propotnick 23 thru 30 are identical)

Point out his is again the same arguements plaintiffs brough up in their motion for Discovery Sanctions and 2nd enlargement of time, who can ascertain the extent defendants attorney have tampered with declartion and interrogatories from defendants deviating from the truth and specifics to present evasive and broad answers this is unacceptable practice and behaviour on the part of defendants attorneys what are they trying to hide and who do they think they are fooling?

Other defendants answers to interrogatories are suspiciously identical as well and Contradictory to previous stipulations as an example is Exhibit F. in plaintiffs Opposition filed Jan 18th 2006 this exhibit contains a stipulation by defendants "that during the relevant time period, the policy of Halawa Facility was to separate members of rival gangs and that "sometimes" left non-gang members housed in the same population as known gang members. The word "sometimes" is of significance in the use of the housing practice.

Plaintiffs have alleged and argued that this word "sometimes" is the Arbitrary use against an identifiable group and suspect class in the use of the housing practice resulting in unconstitutional exclusion of the separation process/practice/custom/policy used for rival prison gang members and denying non-gang members an equal opportunity to participate in protection and safety issues concerning compatibility in a separated concentrated rival prison gang environment in a Maximum security prison setting.

The point on this is when reviewing defendants interrogatories they try to change the perception of the stipulation from "sometimes" to all the time. The reason why defendants stipulated in the First place the word "sometimes" is simply because sometimes non gang members were housed in the separated concentrated rival prison gang housing area and sometimes they were not and placed in a non-gang housing area. Defendants try to twist this perception that every Quad in Both medium and high security facility this was occurring when in fact plaintiffs argue it was not and the housing areas this practice was occurring was limited to about half the Quads in the entire prison whereas the other half had non-gang members and mostly concentrations of non-gang members. The Quad plaintiffs Anthony Risket and William Kotis came from before housing in the challenged housing area was a non-gang member environment there were no prison gang members separated or otherwise and plaintiffs knew that Module 4 contained all non-gang members as well as certain other Quads in different Modules. Plaintiffs are in opposition to this misrepresentation of the use in the housing practice.

Another point on this is the easy alternative to putting a non-gang member in the challenged housing area, which was offer protective custody before housing in a rival gang

page 7 of 11

concentrated maximum security environment or place the non-gang member in a non-gang quad. Plaintiff allege and claim that not to do this and without warning or screening to house a non-gang member new to the prison (Fresh) in with seasoned concentration of rival gang members who already have demonstrated their propensity of violence with acts of violence within the prison upon both rival prison gang and non-gang members and to do this to a inmate unaware on a moments notice is a easy foreseeable predictable danger to that inmate and to say it is "not necessarily" so is a demonstration of deliberate ignorance.

Point on this is the New inmate is Vulnerable to extortion, coercion, and recruitment by the seasoned rival prison gang members another point he has no record of institutional violence what so ever and not one tatoo as plaintiffs have none, on the other hand those rival prison gang members have earned their way into the maximum security setting through a history of violent acts in the prison these violent acts include act of violence against rival prison gang as well as non-gang members before being housed in the Maximum Security separated rival prison gang housing area.

Plaintiff have no propensity for violence and did not have a demonstratable history of it like the rival prison gangs did a trier of fact certainly could agree that this danger is Obvious Moreover the housing area plaintiffs were put in contained the worst and most violently demonstratable rival prison gangs in the entire state of Hawaii prison system, 3 of these prison gang members managed to Bust through the concreat and escape from Halawa high security facility endangering the public. this occured in April of 2003

Plaintiffs argue intent to harm is demonstrated in plaintiffs evidence and defendants admissions and omissions as well as the arguments herein at page 4 demonstrating a pattern of beatings and "deliberate indifference to the high probability that this risk might occur." See, e.g., Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Rhodes v. Chapman, 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed. 2d, 69 L.Ed.2d 59 (1981) quoting Overton v. Bazzetta 123 S.Ct. 2162 at 2170 (III).

Plaintiffs argue this housing practice is a dramatic departure from accepted standards for conditions of confinement especially in a Maximum Security setting. Plaintiffs assert that the challenged housing practice is a violation of the 8th amendment and encompasses equal protection laws concerning prisoners who are an identifiable group/suspect class and subject to a discriminatory housing practice that excludes non-gang members from protection and safety issue for separation whereas rival prison gangs are afforded these safety precautions and safeguards and creating disparate impact and disparate classes of prisoners (non-gang members and rival prison gangs) in the use of a constitutionally defective housing practice.

Defendants interrogatories answers concerning how many rival prison gang members were allowed in a Quad at one time is indicative that there was no set limit giving credit to plaintiffs assertion that a concentration of 15-18 were housed in an area that held only 24 inmates and that plaintiffs were housed with 15-18 rival prison gang members and leaders belonging to one single rival gang.

Defendants answers to interrogatories concerning screening for compatibility with separated rival prison gangs is indicative that there was and is no screening for compatibility affirming plaintiffs claim there is no screening for compatibility

page 9 of 11

and this is affirmed by defendant David Apao answer to interrogatory #4 "None to my knowledge".

Defendant Cinda Sandin response to interrogatories #3. here defendant Sandin states "its impossible to determine all gang and non-gang members and separate them accordingly". this is not true and defendants effectively used a screening and classification practice to determine rival gangs and separate them accordingly as stipulated and presented as evidence in plaintiffs Opposition exibit F. this is where defendants attempt to change the perception of the housing practice in stateing "Non-gang and gang members are housed together throughout HCF." which is not true.

also at Defendant Sandin response to interrogatory #11. "all inmates have the potential to victimize other inmates". this statement is broad and evasive, it does not take into account plaintiffs allegation that gang targeting is pervasive in the challenged housing area and is much different than a disagreement or fight between non-gang members. prison gangs operate as a organized structure with the purpose and goal to demonstrate power through violence and intimidation, the Nature and Character of HCF prison rival gangs is totally different than fights between non-gang members. With prison gangs an inmate knows he is up an organization not a one on one conprontation with a non-gang member. Defendant Sandin attempts to put non-gang members and rival prison gangs in the same box but these 2 types of inmates are not at all the same and non-gang members do not have the same goals or character as prison rival gangs or share the same goals and objectives.

Defendants try to convince that rival prison gang only concern is the other rival prison gang and in part this is true however the other side of the coin will show prison gangs that are separated from rival prison gang will focus their actions gang targeting upon those fresh new non-gang inmates that are ordered to be housed with them resulting time and time again in beatings coercion and recruitment in the housing area.

page 10 of 11

and it is the non-gang member who is beaten, coerced, and forced into gang membership not the other way around and the policy of the rival prison gang plaintiffs were housed with was that any new inmate placed in their housing area one way or another will join their prison gang or suffer the consequences.

Plaintiffs address their arguments for qualified immunity in there opposition at pages 24, 25, 26

Also Defendants answers to interrogatory 2, 3 is indicative that there is no training, instruction, written rules in the housing practice, custom and policy giving credit to plaintiffs claims of failure to train and failure to provide safe guards. at (interrogatory 2, 3). also see causes of action.

Plaintiffs main arguments are contained in their Opposition filed Jan 18th 2006 this supplement is meant to introduce to the Honorable Court Defendants answers to interrogatories and arguments to support plaintiffs Opposition to defendants motion for Summary Judgement.

Plaintiff will not be adding any more to this and will await the Honorable Courts decision in this matter. plaintiff ask that the court deny defendants motion for summary judgement and defendants qualified immunity. Plaintiffs would have requested a second set of interrogatories but from the apparent altering and suspiciously identical answers plaintiffs are convinced that defendants attorney will continue to manipulate the rules of Federal Civil procedure concerning discovery and answers to interrogatoryes through alterations or other means to distort, and misrepresent facts

again interrogatories from Edwin shimoda, saia finau and John payton have not responded or produced to plaintiffs as of yet.

Respectfully Submitted

Anthony Nesbit
ANTHONY NESBIT plaintiff pro se

Date April 6th 2006

page 11 of 11